UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 13-64561-fra11 |
| C & K MARKET, INC., ) | |
| ) | |
| Debtor. ) | |
| ) | Adversary Proceeding |
| ENDEAVOUR STRUCTURED EQUITY AND ) | No. 14-06119-fra |
| MEZZANINE FUND I, L.P. and ) | |
| THL CREDIT, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| DALE ENGEL, MELVA J. ENGLE, MARCUS R. ) | |
| GOULD, CHARLOTTE J. GOULD, ROBERT ) | |
| KOMLOFSKE, KOMLOFSKI CORPORATION, ) | |
| KENNETH MARTIN, LYNDA MARTIN, S & J ) | |
| REED, INC., TARKS, INC., YANTIS ) | |
| ENTERPRISES, INC., ) | |
| ) | MEMORANDUM OPINION |
| Defendants. ) | |

## FACTS

Prior to its petition for relief, the Debtor owned and operated approximately sixty grocery stores and pharmacies in Southern Oregon and Northern California. In 2004, the Debtor[1] purchased the business of

---

[1] Purchases of pharmacies and stores was actually made by C & K Express, Inc., a wholly-owned affiliate of C & K Market. Prior to bankruptcy, C & K Express was merged into the Debtor C & K Market,
(continued...)

Page 1 - MEMORANDUM OPINION

S & J Reed, Inc. (Reed) and in 2006 the business of Kenneth and Lynda Martin (Martin). Martin received a cash down payment as part of the purchase price and a 10-year promissory note for the remaining balance due. The Martins also signed a subordination agreement with C & K Market and the then senior lender for C & K Market, General Electric Capital Corp. (GE), by which the amounts due under the promissory note would be subordinated to C & K Market's obligation to GE in the event of an "Insolvency Event," and upon the occurrence of such event no payments would be made on the Martin note until the obligation to GE was paid in full. A similar sale was made in the case of Reed and, according to documents presented to the Court by Plaintiff, a subordination agreement was also signed by Reed.

On October 28, 2010, a promissory note (the C & K Note) was executed between Endeavor Structured Equity and Mezzanine Fund I, L.P., THL Credit, Inc. (collectively the Senior Lenders) and C & K Market[2], by which C & K Market borrowed unsecured funds which were used to refinance the claims held by GE and another lender. Senior Lenders and U.S. Bank replaced GE and the former lender, whose debts were paid in full. Payment in full of GE's and the second lender's loan terminated the subordination agreements entered into by Martin and Reed, according to the terms of those agreements.

Sometime after the C & K Note was entered into, a representative of C & K Market sent a letter to both Martin and Reed, requesting that they sign new Subordination Agreements, which they did. As with the earlier subordination agreement, Martin and Reed subordinated their right to payment from C & K Market to C & K Market's obligation to its Senior Lenders and U.S. Bank.

In January 2011, Chetco, a predecessor of Defendant Yantis Enterprises, Inc. (Yantis), sold a pharmacy to C & K Market. Timothy Yantis, as representative of Chetco, was presented with and signed a Subordination Agreement identical to the ones received by Martin and Reed, along with other documents of the sale, including a promissory note in the amount of $1.5 million.

---

[1](...continued)
and ceased to exist. Any actions taken by C & K Express will be referred herein as being taken by the Debtor, C & K Market.

[2] The Note and Warrant Purchase Agreement dated October 28, 2010.

Page 2 - MEMORANDUM OPINION

On November 19, 2013, C & K Market filed for bankruptcy under chapter 11. A Plan was thereafter confirmed which provided stock in the Reorganized Debtor to unsecured creditors in lieu of cash. The secured claim of U.S. Bank was paid in full on the effective date of the Plan. As the holders of the majority by dollar amount of unsecured claims against the Debtor, the Senior Lenders became the controlling shareholders of the Reorganized Debtor. The Senior Lenders filed this adversary proceeding against Martin, Reed, and Yantis (collectively, the Subordinated Creditors), and other defendants who had signed Subordination Agreements with the Senior Lenders. The defendants other than Martin, Reed, and Yantis chose not to contest the matter and have been defaulted.

The adversary proceeding seeks a declaratory judgment that under the Subordination Agreements, Senior Lenders are entitled to hold the stock issued to the Subordinated Creditors, as collateral, until such time as the pre-petition obligation under the C & K Note is paid in full in cash. The Subordinated Creditors filed a joint answer with affirmative defenses and a counterclaim.

Plaintiffs filed a motion for summary judgment, seeking judgment that (a) declares that the applicable Subordination Agreements as between the Plaintiffs and the Defendants are enforceable according to their terms; and (b) directs C & K Markets, Inc. (the "Debtor") to deliver the reorganization securities to which the Junior Creditors would otherwise be entitled under the Debtor's confirmed *Second Amended Chapter 11 Plan of Reorganization* to the Senior Lender Representative (as that term is defined in the Subordination Agreements) to hold as collateral until the Senior Lenders' claims are paid in full and in cash as calculated under the operative loan and intercreditor agreements.

Defendants filed a cross-motion for partial summary judgment on two of their affirmative defenses and on their counterclaim: 1) absence of consideration, 2) termination of the Subordination Agreements through payment by Debtor of the underlying debts, and 3) termination of the Subordination Agreements by termination of the underlying debt instruments under the Plan of Reorganization. A hearing was held for oral argument and the matter was taken under advisement.

// // //

// // //

Page 3 - MEMORANDUM OPINION

SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc*. at 257. Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 at 326-27.

DISCUSSION

*Termination of Subordination Agreements*

The Plan of Reorganization provides at Section 12.2:

> As of the Effective Date, and except as expressly provided in this Plan or the Confirmation Order . . ., any note, agreement, instrument, judgment, or other document evidencing a Claim in any impaired Class shall be deemed cancelled, null, and void, except for the right, if any, to receive distributions under this Plan; provided, however, that nothing herein shall affect the liability of any entity other than Debtor on, or the property of any entity other than Debtor for, such Claim.

Defendants argue that the above Plan provision cancelled the C & K Note (along with all other debt instruments evidencing a claim against the bankruptcy estate) and the Note was paid in full by the Debtor through the transfer of stock. Because the Senior Lenders have been paid in full and their debt instrument

Page 4 - MEMORANDUM OPINION

cancelled, there no longer exists a debt to which the Defendants' debts are subordinated. The Subordination Agreements are therefore terminated and the Court should so find.

The Subordination Agreements signed by the Defendants specify in ¶ 1 the duration of the Agreement:

> Until Senior Indebtedness shall have been paid in full in cash and all commitments by Senior Lenders to make advances or any extensions of credit to Borrowers shall have expired or have been terminated, Creditor agrees that its rights to receive payments in respect of the Junior Indebtedness shall be fully subordinated to the rights of the Senior Lenders to receive payments . . . .

Paragraph 3 of the Subordination Agreement provides the effect of a bankruptcy filing by C & K Market:

> Upon any distribution of all or any of the assets of Market to creditors of Market or upon the dissolution, winding up, liquidation, arrangement, reorganization, adjustment, protection, relief or composition of Market or its debts . . . any payment or distribution of any kind (whether in cash, property or securities) which otherwise would be payable or deliverable upon or with respect to the Junior Indebtedness will be paid or delivered directly to the Senior Lender Representative for application (in the case of cash) to, or as collateral (in the case of non-cash property or securities) for, the prepayment or payment of the Senior Indebtedness until the Senior Indebtedness shall have been paid in cash in full. . . .

Defendants argue that the exception provided in Plan § 12.2 does not apply to them because they are not guarantors of or otherwise liable for the C & K Note. However, that provision is broadly written and does not specify that it is limited to "guarantors" of the loan. It states that "nothing shall affect the liability of any entity other than the Debtor . . . for . . . such claim." That provision, being broadly written, must be interpreted to encompass the Defendants' duties to Plaintiffs respecting payment of the C & K Note in the event of a "Subordination Event," such as the filing of bankruptcy by C & K Market. Granted, the Defendants' obligation to Plaintiffs for payment of the C & K Note is limited to the distributions received by them under the Plan of Reorganization.

Rather than evidencing a claim, the Subordination Agreements are an agreement between claimants establishing their relative priority of payment and Plaintiffs' right to be paid first in the event of a defined event. That right was not terminated by the Plan of Reorganization.

// // //

Page 5 - MEMORANDUM OPINION

Finding that the Defendants' duties under the Subordination Agreements were not cancelled at confirmation, the Court must determine whether the obligation was extinguished by payment of the bankruptcy distribution to the Plaintiffs. Again, the debt was extinguished as to C & K Market, which has fulfilled its financial duty to Plaintiffs under the Plan, but the Defendants' obligation was not terminated. Under the Subordination Agreements, the stock received by the Defendants under the Plan of Reorganization is subject to payment of the C & K Note until such time as the debt to Plaintiffs is "paid in full in cash." It can be argued that there are certain "cash equivalents" which should qualify as cash in a transaction. However, stock in a closely held corporation with no active market in its securities cannot be deemed a "cash equivalent." Summary judgment must therefore be denied with respect to Defendants' affirmative defense of Payment and Count 1 of its Counterclaim of Discharge of the Subordination Agreement.[3]

*Lack of Consideration in Contractual Formation*

Defendants argue that the Subordination Agreements are unenforceable because there was no separate consideration given for the Defendants' execution of the Agreements. Consideration is an element required under Oregon law to the successful formation of a contract.

A. Consideration Under Oregon Law

"[C]onsideration consists of the accrual to one party of some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Shelley v. Portland Tug & Barge Co.,* 158 Or. 377, 387, 76 P.2d 477 (1938). *Emmert v. No Problem Harry, Inc.*, 222 Or.App. 151, 155, 192 P.3d 844 (2008). "'Benefit' as used in this rule, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. 'Detriment' means

---

[3] Defendants' motion for partial summary judgment also includes Counts 2 and 3 of their Counterclaim, which are alternatives to Count 1. They seek orders by the Court, should the Court determine that the Subordination Agreements are enforceable, fixing the value of the Plaintiffs' distribution under the Plan of Reorganization and establishing a deadline and procedures for transferring shares to the Plaintiffs. The Court finds that the remedies sought by Defendants in Counts 2 and 3 are not amenable to determination as part of this summary judgment and declines to address them herein, not least because it has no basis at this point for making such determinations.

Page 6 - MEMORANDUM OPINION

that the promisee has, in return for the promise, forborn some legal right which he would otherwise have been entitled to exercise." *Shelley* at 388. Moreover, "[t]he promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise, if the other half is wanting." *Schafer v. Fraser*, 206 Or. 446, 467 290 P.2d 190 (1955)(citing *Wisconsin & Michigan R. v. Powers*, 191 U.S. 379 (1903)).

Once a contract has been made, any promise thereafter made between the parties is unenforceable unless it is supported by some new consideration. *McGrath v. Electrical Const. Co.,* 230 Or. 295, 305-06, 364 P.2d 604 (1961). Modification of a contract requires new consideration. *Mitchell v. Pacific First Bank*, 130 Or.App. 65, 74, 880 P.2d 490 (1994).

An exception to the requirement that consideration be present is the doctrine of promissory estoppel. This provides that despite the lack of consideration, a promise may be binding on the promisor when a "promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee . . . does induce such action or forbearance . . . if injustice can be avoided only by enforcement of the promise." *Schafer v. Fraser*, 206 Or. at 468.

Plaintiffs cite to two additional cases which they offer for the proposition that consideration may be given to a third party. In *Cummings v. Central Oregon Bank et al.*, 110 Or. 101, 223 P. 236 (1924), the defendant hired plaintiff to care for cattle upon which the defendant held a "mortgage." Plaintiff performed the work, but defendant refused to pay. The court awarded plaintiff a judgment for the value of his services and defendant appealed, arguing that there was no consideration for the contract of employment with plaintiff. The Oregon Supreme Court held that there had been consideration: the benefit to defendant was the labor in caring for the cattle upon which the defendant held a mortgage, the detriment to the plaintiff to whom the promise was made was the loss of his time and labor in caring for the cattle. Having found that consideration did exist between the promisor and the promisee, the court went on to state, citing *Williston on Contracts*, "It would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or inconvenience and which he was not obliged to perform. . . ." This is essentially a restatement of the doctrine

Page 7 - MEMORANDUM OPINION

of promissory estoppel. A benefit does not have to run to the promisor if, <u>at the request of the promisor</u> and <u>upon the strength of that promise,</u> the promisee performs some action or forbearance.

The second case cited by Plaintiffs is a bankruptcy case from Hawaii: *Chang et al. v. Crouch et al. (In re Hokulani Square, Inc.)*, 413 B.R. 706 (Bankr. D. Hawaii 2009). The plaintiffs argued that even if they had signed the two subordination agreements at issue in that case, they received no consideration for doing so and that both agreements were therefore invalid. The court defined "consideration" under Hawaii law " 'as a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment.' . . . If the promisee incurs a detriment, it does not matter that the promisor receives no benefit . . . . Similarly, consideration is sufficient even if it flows to a third party. The court does not need to consider what induced the promisor to make the promise for the third party." *Id.* at 713 (internal citations omitted). Aside from the fact that this opinion is interpreting the <u>Hawaii</u> law of contracts, it appears that the key, once again, is that even if the benefit of a bargained for exchange between the promisor and promisee runs to a third-party, the promise made must reasonably induce in the promisee an action or forbearance. To the extent the holding is otherwise, it is inconsistent with Oregon law.

B. Consideration in the Execution of the Subordination Agreements

1. Reed and Martin Subordination Agreements

Paragraph 6.3 of the C & K Note deals with Junior Subordinated Debt. The first half of the paragraph deals with subordination of the "Nidiffer Note," a debt owing to the former principals of C & K Market, Inc. Execution of a Junior Subordination Agreement for the Nidiffer Note was made a condition of the loan agreement. The second half of the paragraph reads as follows:

> Following the Closing Date, and no later than December 31, 2010, Borrowers[4] will use commercially reasonable efforts to obtain the consent of the parties to the subordination agreements delineated in <u>Schedule 6.3</u> to the assignment of such agreements to Agent in form and substance reasonably satisfactory to Required Lenders.

// // //

---

[4] i.e. C & K Market, Inc. and C & K Express, LLC, a wholly owned affiliate of C & K Market, Inc]

Page 8 - MEMORANDUM OPINION

Schedule 6.3 includes the names of nine creditors, other than the Nidiffer Family, LLC, including Martin and Reed. A letter dated November 2, 2010 was sent to Martin stating that as C & K Market's new lender, U.S. Bank required that a new subordination agreement[5] be signed by all note holders. Reed stated in his declaration that he remembered receiving such a letter as well. The subordination agreement signed by each stated in its preface that "[i]t is a requirement of the Financing Agreement [with U.S. Bank] and the Note and Warrant Purchase Agreement [with Plaintiffs] that" the note holder enter into a new subordination agreement. Neither of the Defendants received any additional consideration for signing. Plaintiffs argue that both Reed and Martin, by signing the Subordination Agreements, made a promise to subordinate the payment of their notes to C & K Market's obligation to the Plaintiffs and U.S. Bank. The benefit of that bargain went to C & K Market, which received the loans from U.S. Bank and Plaintiffs, while a detriment was incurred by Plaintiffs and U.S. Bank, who parted with money via the loans to C & K Market. The question as to enforceability of the bargain is this: were the promises by Martin and Reed to subordinate payment of their notes and the detriment of making loans by Plaintiffs and U.S. Bank the motives for each other? In other words, were the loans made by Plaintiffs and U.S. Bank predicated on subordination agreements being executed by the junior note holders?

The only evidence the Court has is the terms of the C & K Note itself. As indicated above, ¶ 6.3 of the Note requires that C & K Market "use commercially reasonable efforts to obtain the consents of the parties to the subordination agreements." Unlike the subordination of the Nidiffer note, which was made a precondition of the C & K Note, prior subordination of the other note holders was not necessary under the terms of the Note. Similarly, a later termination or attempted revocation of the Nidiffer note is an event of default at ¶ 11.1(i)(r) of the Note, but not with respect to other subordination agreements. Paragraph 11.1(i)(c) provides for an event of default where "any Borrower does not observe, perform, or comply with any term or provision of this Agreement or of any of the other Purchase Documents to which it is a

---

[5] Actually, Martin and Reed each signed two Subordination Agreements, as each received two promissory notes for the sale of their businesses.

Page 9 - MEMORANDUM OPINION

party . . . ." Clearly, the borrower (C & K Market) was required under the terms of the C & K Note to "use commercially reasonable efforts" to obtain the subordination agreements. Failure to use such (undefined) efforts would presumably be an event of default. However, what would be the effect if a creditor, when presented with the subordination agreement, refused to sign? Would anything short of success constitute an "unreasonable" commercial effort? It would not seem likely, but because the Court must view this evidence and draw all inferences in the light most favorable to Plaintiffs, it is sufficient to prevent a grant of summary judgment. Moreover, the Defendants' obligations were also subordinated to C & K Market's obligation to U.S. Bank. According to the Subordination Agreements, it was a "requirement" of U.S. Bank's financing agreement. The lack of this financing agreement in the record of this case, and information as to the effect of a failure to obtain subordination agreements from the Defendants, is also sufficient to prevent summary judgment.

2. Yantis Subordination Agreement

The situation in Yantis is different from that of the other two Defendants in that Mr. Yantis was presented with a Subordination Agreement at the time that he sold his business to C & K Market in January 2011. He states in his declaration that he doesn't specifically remember seeing or signing the document or that there was any discussion regarding the document.

The C & K Note payable to the Plaintiffs does not appear to contain any requirements that the obligation due on <u>future</u> sales to C & K Market be subordinated to the obligation to Plaintiffs. However, the Subordination Agreement also states that U.S. Bank's financing statement has such a requirement. If there was such a requirement and the Yantis sale would not have occurred absent an executed Subrogation Agreement, then there would have been consideration for the execution of the Subordination Agreement: the sale of the business. Yantis would have received a down payment and a promissory note for the balance, partly in exchange for his execution of the Subordination Agreement.

The record does not contain a copy of U.S. Bank's financing statement and/or testimonial evidence as to the requirement that a Subordination Agreement be executed. Absent that material information, the Court
// // //

Page 10 - MEMORANDUM OPINION

cannot grant summary judgment on the defense of lack of consideration for the Yantis Subordination Agreement.

## CONCLUSION

Based on the foregoing, the Court will enter an order granting in part the Plaintiffs' motion for summary judgment as to Defendants' affirmative defense of discharge through payment of the underlying debt and on Count 1 of the Defendants' Counterclaim. Defendants' motion for partial summary judgment will be denied. All issues not otherwise disposed of in this summary judgment proceeding will be left for trial.

FRANK R. ALLEY, III
Chief Bankruptcy Judge